# THE CITY OF PORTLAND, Respondent, v. PERRY G. BAKER, Appellant.

Pleading—Injunction—Irreparable Injury.—To warrant the court in granting an injunction, it must appear from the facts stated in the complaint that the plaintiff will suffer irreparable injury unless the defendant be enjoined; and the allegation in the complaint that the plaintiff will be irreparably injured is not sufficient. Facts must be stated from which the court may judge of the injury and its extent.

Employment of Chinese—Remedy for Violation of Contract Concerning.—Where the statute declares that the employment of certain laborers on the public works shall render null and void a contract by a contractor with a municipal corporation, such contract is forfeited by the contractor on the doing the unlawful act, and the corporation may disregard the contract without resorting to a court of equity to annul the contract.

Appeal from Multnomah County.

On the twenty-ninth day of May, 1879, in pursuance of ordinance No. 2427, duly passed by the common council, the appellant entered into a contract with city of Portland, for the improvement of Tenth street in front of and abutting upon block Nos. 266 and 267 in said city. The improvement consists of grading, laying sidewalks and crosswalks. The consideration, as named in said contract, is merely nominal.

It is alleged, that previous to the entering into the contract, the appellant, for the purpose of avoiding the provisions of the law upon the subject of the employment of Chinese upon the public streets, had entered into a private contract with the owners of the adjacent property, which would, under the law, be chargeable for the improvement made under said contract, and that the real consideration for said work was to be paid to said appellant by such owners without the intervention of the city. That said improvement is a public work to be done under the supervision of the respondent, The City of Portland, and to the satisfaction of its officers and agents. That by the provisions of the said contract, the appellant expressly agreed and promised not to employ any Chinese upon said work, and said contract was upon that condition. That afterward he entered upon the performance of the said contract, and is

now engaged in the same.  That in violation of the law and of the express terms of said contract, he is performing, and causing to be performed, the labor of said improvement, almost wholly by Chinese labor.

That by reason of the premises, the respondent and the citizens thereof have been and are greatly damaged, and, unless restrained, will suffer great and irreparable injury, and that the city has no remedy at law, wherefore it asks that the appellant be restrained from employing Chinese on said work.

The appellant demurred.  The demurrer was overruled and judgment entered as prayed for.

*Northup & Gilbert,* for appellant:

To entitle a suitor to an injunction, he must suffer irreparable injury if the injunction is not granted.  This principle is a fundamental one in equity, and we only quote from many authorities.  (High on Injunctions, secs. 388, 421, 428, 486, 519; 11 Am. Dec. 506.)  The mere allegation in the pleadings that plaintiff will suffer irreparable injury if injunction not granted, is not sufficient.  Facts must be alleged from which it must appear that such injury will arise.  (High on Injunctions, sec. 35; *Branch* v. *Supervisors,* 13 Cal. 190; *Battle* v. *Stephens,* 32 Ga. 25.)  Equity will not interfere where no irreparable injury is alleged beyond an averment of a breach of contract.  (*W. Union Tel. Co.* v. *Phila. R. R. Co.* 9 Phil. 494.)  Equity will not interfere where the injury is susceptible of pecuniary compensation. (*Burges* v. *Kattleman,* 41 Mo. 480; *Morris & Co.* v. *Cen. R. R. Co.* 16 N. J. Eq. 419; *Pusey* v. *Wright,* 31 Penn. 396; *Hart* v. *Marshall,* 4 Minn. 294; *Cockey* v. *Carroll,* 4 Md. Ch. 344.) Nor will an injunction be granted for any purpose which can be attained by any other process.  (*Ward* v. *Kelsay,* 14 Abb. Pr. 107; *Marks* v. *Wilson,* 11 Id. 88.)  If a statutory remedy exists for a redress of the wrong complained of, equity will not interfere by injunction.  (High on Injunctions, secs. 31, 82, and 697.)  Nor will equity restrain a party from the violation of a contract where the parties have fixed the damages for a violation.  (*Nessle* v. *Reese,* 19

Abb. Pr. 240; *McCafferty* v. *McCabe*, 4 Id. 57.) Nor while the right to an injunction is doubtful. Courts of equity, in granting injunctions, act with great caution. (High on Injunctions, secs. 523, 762; *Steamboat Co.* v. *Livingston*, 3 Cow. 755; *Attorney General* v. *Utica Ins. Co.* 2 Johns. Ch. 390.)

Apply the principles above stated to the case at bar. It is alleged that the plaintiff will suffer irreparable injury if an injunction is not granted. How, is not stated; nor are facts stated from which an injury can arise. The city has done its duty when it provides properly improved streets, and sees that the claim of the contractor therefor is paid from the proper fund. It can make no difference to the city what class of labor is employed in the work. If the contractor employs Chinese, they get the money that otherwise would be paid to other classes of labor. But if Chinese are not employed, it does not follow that citizens of Portland or of Oregon *will* or *must* be. The latest importation from the remotest corners of the earth, provided he be not a Chinaman, may be employed. · The only qualifications are muscle and the will to use it. It is claimed, however, that an open violation of the law brings lawful authority into disrespect. This may be so, but it is not the province of equity to interfere. The only ground for this would be, that the employment complained of constitutes a nuisance, but that can not be claimed in this case. Even if the citizens of Portland are injured by the acts alleged, it is not the province of the city itself to correct them. It can not maintain a suit to protect them in their rights of labor. It has no such trust or Quixotic mission, nor is it its duty to bring suits to enforce state laws. Its duty and authority alike are confined to its own ordinances; it derives its power entirely from its charter. (Charter city of Portland; Dillon on Municipal Corp., secs. 9*a*, 9*b*, and 10.

But a remedy exists at law. The statute itself provides one. If Chinese labor is employed, the contract becomes void; if void, then the contractor can get no pay; a void contract can not be enforced. It was the intention to make

the remedy simple by stopping payment.    But it is urged
that as the consideration in this case is a nominal one, the
contractor and the owners of the adjacent property having,
prior to the letting of the contract by the city to defendant,
made a contract for the improvement in which the real
consideration was to be paid, the penalty is small and the
contractor gets his pay, and thus the law is evaded.    Not
so.    The contract with the property owners is void equally
with that of the city.    If the property owners choose to pay
when they can not be compelled to, is it the right of any one
to prevent them?    Besides, the city does not allege its
ignorance of this prior contract at the time of entering into
the contract with defendant.    It is only where one has
exercised due caution to prevent an injury, that he can be
relieved by injunction.    (High on Injunction, sec. 707;
*Russ* v. *Wilson*, 22 Me. 207.)

The law under which relief is sought (Laws of 1878, p. 9)
is void.    It is in conflict with the constitution and treaties
of the United States.    All treaties are the supreme law of
the lands.    (Constitution of U. S. art. 6.)    The treaty with
China of June 18, 1858, and the additional articles thereto
of July 28, 1868, provide: "That the two high contracting
parties recognize the inherent and inalienable right of man
to change his home and allegiance; and, also, the mutual
advantage of the free migration and emigration of their citi-
zens and subjects, respectively, from the one country to the
other for the purpose of curiosity, of trade, or as perma-
nent residents."    Article VI. declares: "That Chinese sub-
jects visiting or residing in the United States shall enjoy
the same privileges, immunities, and exemptions in respect
to travel or residence, as may be then enjoyed by the citi-
zens or subjects of the most favored nations." (Pub. Treat.
U. S. 148.)    Chinese laborers stand on the same footing
with those of Great Britain.    No distinction can be made.
(*Baker* v. *City of Portland*, a decision of the U. S. circuit
court for Oregon; see, also, the decision of Justice Field in
the celebrated "Queue Ordinance Case," lately rendered;
Reporter, August 13, 1879.)

*J. C. Moreland, City Attorney, and A. H. Tanner,* for respondent:

Two questions are presented: 1. Is the law of this state, prohibiting the employment Chinese laborers upon streets and public works, valid? 2. Can this law be enforced by injunction?

The first question is one of interest, and the answer thereto involves questions of great magnitude. To defeat this law, appellant relies upon the treaty of the United States with the Chinese empire. In the discussion of this question, we admit fully the authority of the United States to make treaties with foreign nations. But whenever the treaty infringes upon the rights of the states to manage their domestic affairs in their own way, then the treaty becomes null and void. Suppose this treaty had undertaken to grant Chinese in the several states immunity from punishment for crime committed in those states, whom could it bind? Certainly, no one. And no treaty can be binding which in any wise infringes upon the right of the states to legislate upon all matters upon which the power to legislate was not delegated to the general government by the constitution. The treaty-making power can not rise above legislative authority. When the power is not expressly delegated, or does not arise by necessary implication, it remains in the states. The treaty provides that "Chinese subjects, visiting or residing in the United States, shall enjoy the same privileges, immunities, and exemptions, in respect to travel or residence, as may be then enjoyed by the citizens or subjects of the most favored nations." These qualifying words, "in respect to travel or residence," certainly mean something. If they imply the right of the Chinese to come here and enjoy all the rights guaranteed to other nations, in all particulars, then why qualify their rights? These words "travel" and "residence," are well defined. There is no necessity of resorting to courts to interpret them. Their meaning is known of all men. Apply to this language the two familiar maxims, both of which are well-sustained axioms of constructions, viz., "The expression of one thing is the exclusion of another," and "That which is expressed,

puts an end to that which is implied," and the discussion
would seem to be at an end.

There is another rule of construction, which should be ap-
plied to this case: When the court is at liberty to adopt one
of two constructions upon a law, that will be adopted which
favors the rights of our citizens, rather than that which is
against their rights.   Again, it is a fundamental rule of con-
struction that the court will, if possible, give such a con-
struction as will give the statute the effect intended by the
legislature, and every reasonable doubt will be solved in
favor of the legality of the legislative action. (Cooley Const.
Lim. 181.)

There is an authority directly against the legality of this
law, in the decision by his honor Judge Deady, in the
United States circuit court, last summer.   In that case, the
learned judge holds that the right to reside in a foreign
country implies the right to labor there for a living, and that
any attempted intrenchment upon that right is beyond the
power of the state as regards Chinese.

His Honor Judge Bellinger, in passing upon this case in
the court below, reviews somewhat this decision, and his
reasoning upon the case is so apt that we give it:

"The case of *Baker* v. *The City of Portland* is in point,
but I can not admit the correctness of its conclusion.   The
fact that the improvement in question is a public improve-
ment has not been questioned.   The state has the power
and it is its duty to provide means of facilitating communica-
tion between distant localities.   The establishment and
maintenance of roads is therefore one of the high exercises
of its sovereign power.   A street in any city or town, com-
mon to all people, is a public highway.   The act of a state
legislature authorizing the paving and grading of streets in
a city, and the assessment of the expenses of the same upon
the owners of lots fronting on such street, has been held to
be a proper and constitutional exercise of the taxing power
by the legislature.   (Angell on Highways, sec. 181.)   The
city, in opening or improving streets, exercises a merely
delegated authority conferred by the state.   The right to
improve streets, and the manner in which the improvement

shall be made, are matters exclusively within the regulation and control of the legislature—as much so as the erection of public buildings for state uses. Those who perform labor upon such improvements are in an employment which the state has authorized and provided for, and which is paid for out of a fund raised, as has been seen, by a tax. It follows that if the state can not prohibit the employment of any class of persons upon street improvements, it can not make such prohibition in respect to any employment which it authorizes. If the legislature should enact that no Chinese subject should be employed as guards at the penitentiary, or as janitors about various offices of the state, or as workmen upon the unfinished capitol building, the act, under the authority cited, would not be allowed to stand.

" The decision in the case referred to is upon the assumption that the right secured by the treaty to subjects of China to reside in the United States implies the right to labor here for a living. Conceding this, it does not follow that the right to labor imposes upon the state the duty of providing employment. If this right to labor is thus secured, it is nothing more than the right to labor for those who choose to employ them. Is its right in this respect less than that of citizens within its jurisdiction? The state has undertaken to say for itself that it will not employ this class. This is not the limitation of a right, but the exercise of one. The construction of public works is sometimes resorted to by governments as a matter of state policy, one of the objects of the improvement being to benefit the laboring classes by providing an opportunity for labor. The propriety of the adoption of this policy in this country is sometimes urged. It would certainly not be claimed that the advantages which such a policy offers to labor is necessarily the property of the world, and that the government has not the right in the bestowal of its favors to discriminate between its own citizens and aliens.

" It is not apparent upon what reason the objection to the exclusion of Chinese subjects from employment on public works can be made that will not apply to every branch of the public service, nor, if a law which so excludes them is

void, why a law which prescribes such qualifications for office-holders as in effect excludes them from office should not also be held to be void. It is clear that if the right of residence is impaired by the determination of the state not to employ them, the resolution of a manufacturing corporation not to employ them will have the same effect. In either case, as the argument goes, the opportunity to earn a living, which the right of residence is made to imply, is abridged. * * * A court will hesitate in construing a law to imply an intention on the part of the law-maker to do that which is unreasonable. There are no presumptions that the treaty-making power acted without inducement; that it granted away important privileges without any compensating advantages. Unreasonable concession must be clearly expressed. And it is not probable in this case that it was intended by the treaty power to concede all the rights which it is the object of government to secure to its citizens for the consideration which is implied in the extravagant construction given the treaty. * * * Nor is it probable that the treaty intended to destroy the police power of the states—the right of self-preservation of which man can not be divested under any form of government or in any state of society. There are no presumptions in favor of a construction that makes the treaty so unreasonable and far-reaching in its results, and that abolishes in favor of Chinese subjects that honorable distinction which is the citizen's just pride, and which it is obviously the policy of the government to maintain.

"In the case of *Ho Ah Kow* v. *Sheriff Nunan*, it is decided that the ordinance which provides for cutting the hair of criminals is special legislation, for the reason that upon Chinese subjects it operates as a cruel and unusual punishment; that though general in its terms, it operates upon a specific class with exceptional severity, since the possession of long hair is a religious and national custom peculiar to that class. The decision is one of unusual interest. It lays down the doctrine that when any general law bears with greater severity upon one class than upon others, although the fact may be due to the customs, peculiar

views, or religious beliefs of that class, such law is special legislation and void. Stated as broadly as the decision states it, the polygamous practices of the Mormon sect will find ample guarantees in the fourteenth amendment, and a sect religiously believing in human sacrifice might hope to set aside any state statute against homicide.

"But the argument against the infliction of cruel and unusual punishment has no application in the cases under consideration, and the decision upon the ordinance case can have no more than a remote bearing in their decision. Courts are never in haste to declare acts of the law-making power void, and for that reason, in cases like these, if the words of the treaty are susceptible of two meanings, one favorable to the law of the state and the other hostile to it, the former will be allowed to prevail. So far as this court is concerned, the law of the state against the employment of Chinese subjects upon public works will be enforced."

The second question suggested, we think, is one of less difficulty. If the law be valid, then the only possible way it can be enforced is by injunction. The charter takes away the right to govern streets and highways from the state, where it was primarily vested, and places it in the city. It can designate the kind of improvement, and the time and manner of putting it down. It pays the contractor by drawing warrants upon the fund for the improvement of the street, and that fund is only supplied by the levy of an assessment upon the owner whose property is improved. Now, if that owner shall, as alleged in this case, make a private contract to improve the street, then it is taken at a nominal rate from the city. No money is required to be collected; the contractor presents no bill to the city; the work has been done by Chinese labor; the law of the state and the express terms of his contract have been violated, and yet there is no remedy unless by injunction. When a contract contains covenants to do certain acts, and also other covenants to abstain from doing certain other acts, the breach of the negative covenants may be restrained by injunction, even though there may be no jurisdiction to compel a specific performance of the affirmative covenants. (3 Waits' Ac-

tions and Defenses, sec. 6, p. 693; 26 N. J. Eq. 40; 1 Holmes, 253; Hilliard on Inj. 621; High on Inj. secs. 17, 23, 24, 31, 695, 697, 714, 733, 734, 735, 913; 23 N. J. Eq. 161; 34 Ind. 115; 44 Ind. 248; 5 Wall. 74; 39 Wis. 160.)

In the present case the defendant was not only bound by the provisions of the state law not to employ Chinese, but he was bound by the solemnity of his contract. The city could not compel him to go on and employ other laborers, but in the language of the celebrated Lord Eldon, "it could do the only thing in its power; it could induce him indirectly to do one thing by restraining him from doing another."

The enforcement of specific covenants are matters which are properly cognizable in courts of equity, and the remedy by injunction to prevent the violation of negative agreements not to do a particular thing, is closely akin to the remedy by specific performance of agreements of an affirmative nature. (High. on Inj. sec. 913.)

By the Court, Boise, J.:

We think the complaint in this case does not show that the plaintiff has or is likely to suffer any pecuniary injury from the employment of Chinamen by the defendant, and that the complaint does not therefore make a case which would authorize the court to interfere by injunction. It is true the complaint alleges " that by reason of the premises (that is, the employment of Chinamen), the plaintiff and the citizens thereof have been and are greatly damaged, and that unless defendant is restrained, will suffer great and irreparable injury." But the complaint fails to allege in what manner the city is injured, either by showing that the work is not well done, or making any allegation of any fact from which the court can conclude that any injury has or will result from such employment, and facts showing the injury must be alleged to warrant the court in restraining a defendant by injunction, which is the exercise by the court of an extraordinary and harsh power, which can not and ought not to be invoked or exercised except in cases where a plaintiff is in danger of suffering irreparable injury. In

High on Injunction, sec. 35, the rule is stated to be that "the mere allegation of irreparable injury will not suffice to warrant an injunction; but the facts must appear on which the allegation is predicated, in order that the court may be satisfied as to the nature of the injury."

The contract in this case, between the city and the defendant, was simply an undertaking on the part of the defendant to do the work on Tenth street for a nominal consideration, with the understanding that he should be paid for said work by the owners of the adjacent property, and that he should not employ Chinamen to do the work. The city had no pecuniary interest in the matter of who did the work, except to have the work well done. On this subject there is nothing alleged in the complaint, and we are not to presume, from the employment of Chinamen, that pecuniary injury would result.

If the act of the legislature referred to is in force, then the contracts which the defendant had, both with the city and with the adjacent owners, became void when he violated the law by employing Chinamen, for it provides that " all contracts which any person or corporation may have for the improvement of any such street or part of street, or public works or improvements of any character, shall be null and void, from and after the date of any employment of any Chinese laborers thereon by the contractor." When the fact of the employment became known, the contract was forfeited to the city, together with the work done by the Chinese. From the time of such violation, the contractor had no more right to work on the street than any other person, and the city being a municipal corporation, with full power to protect its streets, had no need of aid from a court of equity.

We think, therefore, that the plaintiffs have not shown in the complaint a sufficient case to warrant a court of equity in granting an injunction, for no injury is shown to have resulted or to be likely to result from the acts of the defendant. He has violated the law, his contract has become null and void, and the law executes that penalty by depriving the defendant of all benefits under the contract.

The view we take of this case renders it unnecessary to decide the question, whether or not this act of the legislature is in conflict with the treaty with China, and we do not express any opinion on that subject.

The decree of the circuit court will be reversed, and the plaintiff's complaint dismissed with costs, but without prejudice to the rights of plaintiff to commence a new suit.